# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AFSANEH NIKJOOY,

    *Plaintiff*

v.

MARCO RUBIO,

    *Defendant*.

Civil Action No. 24 - 1989 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Afsaneh Nikjooy, a citizen of Iran and a professor at the Iran University of Medical Sciences, seeks to compel Defendant Marco Rubio, in his official capacity as U.S. Secretary of State, to adjudicate her nonimmigrant visa application. ECF No. 1.[1] Professor Nikjooy contends that her B-1/B-2 visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 80-113. The Secretary has moved to dismiss Professor Nikjooy's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. The motion is fully briefed. ECF Nos. 5 to 7. For the reasons explained below, the court will grant the Secretary's motion to dismiss in part and deny it in part.

---

[1] Professor Nikjooy named former Secretary of State Antony Blinken as Defendant, but the current Secretary is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Professor Nikjooy's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA") permits individuals who have "a residence in a foreign country which [they have] no intention of abandoning" to enter the United States "for business or temporarily for pleasure" through the B-1/B-2 visa program. 8 U.S.C. § 1101(a)(15)(B). To obtain a B-1/B-2 visa, the foreign national must complete several steps. *See* U.S. Dep't of State, *Visitor Visa*.[2] First, the applicant must electronically submit a Form DS-160 Application for Nonimmigrant Visa to the consular office corresponding to the jurisdiction in which she resides. 22 C.F.R. §§ 41.101(a), 41.103(a). Typically, the applicant must then appear for an in-person interview with a consular officer. *Id.* § 41.102. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 41.121(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, the officer may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering. U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

Consular officers are forbidden from issuing visas to any individual from "a country that is a state sponsor of international terrorism" unless the government determines that the applicant

---

[2] *Available at* https://perma.cc/EG4V-SURX.

[3] *Available at* https://perma.cc/RH7T-J7US.

"does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Since 1984, the State Department has designated Iran a "state sponsor of international terrorism." U.S. Dep't of State, *State Sponsors of Terrorism*.[4]

In December 2022, Professor Nikjooy filed a Form DS-160 Application to secure a B-1/B-2 visa to attend a conference in the United States. ECF No. 1 ¶¶ 3, 5, 44. In March 2023, she was interviewed at the U.S. Consulate General in Dubai, UAE. *Id.* ¶¶ 4, 45. After the interview, Professor Nikjooy was informed that her visa had been refused under Section 221(g) for further administrative processing. *Id.* ¶¶ 4, 45; *see* 8 U.S.C. § 1201(g). The notification explained that her "case will remain refused while undergoing such processing" and that she "will receive another adjudication once such processing is complete." ECF No. 1-5. Professor Nikjooy has since sent several inquiries to the Consulate General about the status of her application but has received no new information. ECF No. 1 ¶¶ 6, 48; *see, e.g.*, ECF No. 1-4, at 1-3. In April 2024, after notifying the consulate that she had been invited to another conference in the United States, Professor Nikjooy was told that the information had been "forwarded . . . to the officer in charge for further review" and that "her case will remain refused for administrative processing under section 221(g)" of the INA. ECF No. 1-4, at 1.

The delay in the adjudication of Professor Nikjooy's visa since December 2022 has caused Professor Nikjooy "significant financial, professional, and emotional harm" by preventing her from accepting invitations to speak at medical conferences in the United States. ECF No. 1 ¶ 53; *see id.* ¶¶ 5, 46-47, 51. It also harms the "U.S. companies [that] rely[] on her expertise for events and conferences." *Id.* ¶ 51.

---

[4] *Available at* https://perma.cc/TVP6-LQPB.

In July 2024, Professor Nikjooy filed a complaint seeking to compel the Secretary to completely and finally adjudicate her visa application. ECF No. 1. The Secretary has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. The matter is fully briefed. ECF Nos. 5 to 7.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

### III.   DISCUSSION

The Secretary raises two primary challenges to Professor Nikjooy's claims: (1) that the doctrine of consular nonreviewability bars consideration of her claims, ECF No. 5, at 10-13; and (2) that Professor Nikjooy fails to identify a discrete agency action that the Secretary was obligated to, but did not, take, *id.* at 6-10.[5] The court considers each argument in turn.

---

[5] In a departure from similar cases, the Secretary does not argue for dismissal based on the factors set forth in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"), the very analysis *required* to evaluate a claim of unreasonable delay. ECF No. 5, at 1-2. Instead, in a footnote, the Secretary claims that he will move for judgment on the pleadings based on the *TRAC* factors *if* the court denies his

(*continued on next page*)

### A.     Consular Nonreviewability

The Secretary argues that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability. ECF No. 5, at 10.[6] In the context of visa adjudications, "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024). However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

In response to this longstanding precedent, the Secretary points to the D.C. Circuit's decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate," ECF No. 5, at 12. In the Secretary's view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been rendered on the application. *Id.* at 12-13; ECF No. 7, at 13-14; *see Karimova*, 2024 WL 3517852, at *2-3, *6. The court disagrees.

---

motion to dismiss.  *Id.* at 2 n.2; *see also* ECF No. 7, at 1 n.1.  While allowed by the Federal Rules of Civil Procedure, the Secretary's approach strikes the court as an exercise in gamesmanship that increases litigation costs for the parties and taxes limited judicial resources.  The court encourages the Secretary to litigate more efficiently in the future.

[6] It is well established that the doctrine of consular nonreviewability is not jurisdictional.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

6

As an initial matter, the court notes—contrary to the Secretary's assertion, ECF No. 5, at 2 n.1; ECF No. 7, at 3-4—that the D.C. Circuit's decision in *Karimova* does not bind it. The D.C. Circuit has twice declined to publish *Karimova*. *See Karimova*, 2024 WL 3517852, at *6; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1. Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[7] This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

Having considered *Karimova*, the court is not inclined to follow it. In *Karimova*, the plaintiff was in a position substantially similar to Professor Nikjooy's: she had applied for a visa, interviewed at an embassy, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing. 2024 WL 3517852, at *2 (quoted sources omitted). Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must be a "final" decision because a relevant regulation instructed that a consular officer "*must* issue" or "refuse" a visa following an interview, *id.* at *1 (emphasis in *Karimova*) (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular

---

[7] The Secretary cites D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "may be cited as precedent," ECF No. 7, at 3-4 (quoting D.C. Cir. R. 32.1(b)(1)(B)); *see* ECF No. 5, at 2 n.1, which is true as far as it goes. But as the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are 'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). Accordingly, these decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id.* Other than his say-so, ECF No. 5, at 2 n.1; ECF No. 7, at 3-4, the Secretary has pointed to no authority suggesting that this court should take a different approach.

7

officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id.* (quoting 9 FAM § 504.1-3(g)).  Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance.  *Id.* at *6.

This interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process, *see Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free card . . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (citation omitted) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))).

It is impossible to square the Secretary's assertion that placement in "administrative processing" was a *final* disposition of Professor Nikjooy's visa application with the allegations in her complaint.  Specifically, Professor Nikjooy alleges that, after her interview, she "was informed that her application would be placed in administrative processing," ECF No. 1 ¶ 45, and after sending additional information to the consulate, she was told it had been "forwarded . . . to the officer in charge for further review," ECF No. 1-4, at 1.  Accepting these allegations as true and drawing all inferences in Professor Nikjooy's favor—as this court must, *see Iqbal*, 556 U.S. at 678—Professor Nikjooy has sufficiently alleged that she has not yet received a final decision on her visa application, *see Aramnahad*, 2025 WL 973483, at *8; *cf. Ibrahim v. Spera*,

8

No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates").

Additionally, the Secretary's reliance on the FAM for the proposition that a Section 221(g) refusal for administrative processing is a final decision ignores the fact that, until very recently, the FAM referred to cases in administrative processing as ones where "a final determination is deferred." *Shushkov v. Rubio*, No. 24-CV-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025) (citation omitted); *see* ECF No. 7, at 1-2. The Secretary may have amended the language in the FAM, but "administrative processing" remains the same: a non-final disposition that may or may not be changed by an applicant's supplementation of her application.[8]

Professor Nikjooy does not challenge a final decision denying her visa application, nor does she contend that this court should order the Secretary to grant her application. *See generally* ECF No. 1. Rather, she argues only that the Secretary must "adjudicate [her] visa application in a timely manner." *Id.* ¶ 106. Several courts in this district have found, even after *Karimova*, that "the doctrine of consular nonreviewability does not bar challenges to timing as opposed to

---

[8] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice. *See Arab*, 600 F. Supp. 3d at 63 n.1. The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude [a person] w[as] elegible [sic] for the visa sought and additional administrative processing of [the] application is required." U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/YB7Z-9SAF. It further elaborates that a person who is placed in administrative processing "will be given a letter stating this" and "the embassy or consulate will contact [her] when the administrative processing is complete." *Id.* An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa. And the language on the website, which instructs applicants to wait for the embassy or consulate to contact them after administrative processing is complete, supports the court's conclusion that an applicant in this position is still awaiting a final decision on her application.

9

substance." *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Tolymbekova v. Rubio*, No. 25-CV-295, 2025 WL 2576312, at *4-5 (D.D.C. Sep. 5, 2025); *Mehrpooya v. Allen*, No. 24-CV-2340, 2025 WL 2549279, at *5-6 (D.D.C. Sep. 4, 2025); *Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at *7-10 (D.D.C. Aug. 21, 2025); *Shushkov*, 2025 WL 2389939, at *4; *Hojjatoleslami v. Rubio*, No. 24-CV-2871, 2025 WL 2159196, at *3 (D.D.C. July 30, 2025); *Diabin v. Rubio*, No. 24-CV-3374, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-6 (D.D.C. Mar. 11, 2025); *Baygan v. Blinken*, No. 23-CV-2840, 2024 WL 3723714, at *4-5 (D.D.C. Aug. 8, 2024). *But see Rezvani v. Rubio*, No. 24-CV-3381, 2025 WL 1293358, at *2 (D.D.C. May 5, 2025) (noting that "the consular non-reviewability doctrine would likely apply" but dismissing suit for failure to demonstrate a non-discretionary duty).

This court follows the majority approach and determines that Professor Nikjooy's action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered. Accordingly, her case is not barred by the doctrine of consular nonreviewability.[9]

---

[9] The upshot of this conclusion for the Secretary is that the court will dismiss Professor Nikjooy's claim premised on Section 706(2) of the APA (Count I), because Section 706(2) is limited to "final agency action," which has not yet occurred here. *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)); *see Lee v. Blinken*, No. 23-CV-1783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (dismissing a Section 706(2) claim for lack of final agency action where the plaintiff's visa was placed in administrative processing after a Section 221(g) refusal). Additionally, because this case involves agency *inaction*, the Secretary is relieved of his obligation under Local Civil Rule 7(n) to file a "certified list of the contents of the administrative record." *See Janay v. Blinken*, 743 F.

(*continued on next page*)

### B.        Non-Discretionary Duty

The Secretary also contends that Professor Nikjooy has failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim and a merits question for a claim of unreasonable delay under the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 5, at 6.[10]  The Secretary argues that Professor Nikjooy "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action" on her visa application "now that it has been refused under INA Section 221(g)" and placed in administrative processing. ECF No. 5, at 6. As support for this proposition, the Secretary again points to *Karimova*, which he argues is "dispositive" in cases like this one, where "[p]laintiffs seek to compel State Department officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing." *Id.* at 7-8.[11]

---

Supp. 3d 96, 105 (D.D.C. 2024); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 n.5 (D.D.C. 2021); *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).

[10] The Secretary waffles on whether he is seeking dismissal on this basis under Rule 12(b)(1) or Rule 12(b)(6), and he fails to parse through the individual counts in the complaint. *Compare* ECF No. 5, at 6 (asking for a dismissal with prejudice concerning non-discretionary duty), *with* ECF No. 7, at 11 (invoking Rule 12(b)(1) as the basis for a dismissal concerning non-discretionary duty). Under the Mandamus Act, a plaintiff must show (1) "a clear and indisputable right to relief," (2) that the government "is violating a clear duty to act," and (3) "that no adequate alternative remedy exists" in order to establish jurisdiction. *Burwell*, 812 F.3d at 189. The court will thus review Count III under the Rule 12(b)(1) standard. In contrast, under the APA, the question whether a non-discretionary duty exists is not jurisdictional. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (explaining that "a complaint seeking review of agency action 'committed to agency discretion by law,' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)" (citation omitted) (quoting 5 U.S.C. § 701(a)(2))). The court will thus review Count II under the Rule 12(b)(6) standard.

[11] The Secretary also argues that Professor Nikjooy's visa was refused under Section 1735 because Iran is a state sponsor of terrorism and that such a determination is discretionary and unreviewable.

(*continued on next page*)

11

In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." 2024 WL 3517852, at *6. The Court characterized the plaintiff as "argu[ing] that Section 555(b) [of the APA]—and *only* Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application." *Id.* at *3. The Court easily determined that "Section 555(b) does no such thing" and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'" *Id*. (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")).

The problem for the Secretary is that this rationale is wholly inapplicable given this court's understanding of the visa process. *See supra* Part III.A. It may be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision where one has already been made, but, as this court sees it, that is not what plaintiffs like Professor Nikjooy (or Ms. Karimova) are seeking. Instead, they are seeking an initial, final determination on their visa applications. In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for a plaintiff who seeks an initial final decision and wishes for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires. *TRAC*, 750 F.2d at 77.

Here, Professor Nikjooy alleges that a nondiscretionary duty to adjudicate her visa application can be located in a range of statutes and agency regulations, including 5 U.S.C.

---

ECF No. 5, at 1, 6. But Professor Nikjooy alleges that her application was placed in administrative processing under Section 221(g), not Section 1735. ECF No. 1 ¶ 4. The court must credit this allegation in considering the Secretary's motion to dismiss. *Iqbal*, 556 U.S. at 678. But even if Section 1735 were the basis on which Professor Nikjooy's visa application was placed in administrative processing, it does not change the fact that Professor Nikjooy is seeking a final adjudication of her visa application in the first instance. *See Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024) (rejecting a similar argument).

§ 555(b), 8 U.S.C. § 1202(d), 22 C.F.R. § 41.121, and other provisions in the APA and INA. ECF No. 1 ¶¶ 88-89, 107; *see* ECF No. 6, at 15-17. Several courts in this district have concluded that there is a duty to complete adjudication of a visa application, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see, e.g.*, *Tolymbekova*, 2025 WL 2576312, at *5-6; *Mehrpooya*, 2025 WL 2549279, at *7-8; *Thein*, 2025 WL 2418402, at *11; *Shushkov*, 2025 WL 2389939, at *5-6; *Diabin*, 2025 WL 1824841, at *3-4; *Aramnahad*, 2025 WL 973483, at *8-10; *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024); *Vulupala*, 438 F. Supp. 3d at 100. *But see, e.g.*, *Ghasaban v. Rubio*, No. 24-CV-2946, 2025 WL 2506546, at *2-4 (D.D.C. Sep. 2, 2025); *Sabeti v. Blinken*, No. 24-CV-2627, 2025 WL 2457753, at *2-3 (D.D.C. Aug. 26, 2025); *Pour v. Rubio*, No. 25-CV-573, 2025 WL 2374559, at *4-7 (D.D.C. Aug. 14, 2025); *Seifan v. Sweeney*, No. 25-CV-261, 2025 WL 2171093, at *4-5 (D.D.C. July 31, 2025); *Javaid v. Armstrong*, No. 24-CV-2716, 2025 WL 2144100, at *2-3 (D.D.C. July 29, 2025); *Pasiukevich v. Lawton*, No. 24-CV-3349, 2025 WL 2023207, at *3-4 (D.D.C. July 17, 2025).

This court continues to adhere to the view that consular officials have a non-discretionary duty to fully adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon

13

a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

But even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, it would still deny the Secretary's motion to dismiss. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a nondiscretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and *only* Section 555(b) . . . does no such thing." 2024 WL 3517852, at *3. Setting Section 555(b) aside, Professor Nikjooy has cited additional sources of law that she contends establish a nondiscretionary duty to adjudicate her visa application. ECF No. 1 ¶¶ 88-89, 107. At this early stage of litigation, that is sufficient.

\*     \*     \*

Because Professor Nikjooy's claims are not barred by the doctrine of consular nonreviewability, because, in Counts II and III, Professor Nikjooy seeks a final determination on her visa application by pointing to several sources of law creating a nondiscretionary duty for the Secretary to make such a decision, and because the Secretary fails to otherwise contest Professor Nikjooy's claims of unreasonable delay, the court will allow Professor Nikjooy to proceed with Counts II and III of her complaint.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Secretary's motion to dismiss, ECF No. 5, is **GRANTED** with respect to Count I and **DENIED** with respect to Counts II and III. It is further **ORDERED** that the Secretary shall respond to Counts II and III of the complaint on

or before September 26, 2025.  Fed. R. Civ. P. 12(a)(4)(A).  It is further **ORDERED** that the Secretary is relieved of any obligation to comply with Local Civil Rule 7(n) at this time.

_____
LOREN L. ALIKHAN
United States District Judge

Date: September 12, 2025